UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

United States of America

v.                                    Criminal No. 17-cr-185-LM-1
                                      Opinion No. 2021 DNH 152 P
Yoelfi Feliz

## O R D E R

The defendant, Yoelfi Feliz, moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i).  See doc. nos. 23 and 28.  Feliz argues that his recent leukemia diagnosis gives rise to an extraordinary and compelling reason for a sentence reduction.  The government concedes that Feliz has demonstrated an extraordinary and compelling reason for release but nevertheless objects based on the sentencing factors.  The court held a hearing via video on Feliz's motion on September 27, 2021.  Due to a COVID-19 positive test result in Feliz's unit the morning of the hearing, the prison was unable to permit Feliz to attend the hearing.  For the reasons explained below, Feliz's motion is granted.

## STANDARD OF REVIEW

A court may grant a sentence reduction, otherwise known as "compassionate release," under 18 U.S.C. § 3582(c)(1)(A).  That statute provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may

impose a term of probation or supervised release with or without
conditions that does not exceed the unserved portion of the original
term of imprisonment), after consider the factors set forth in section
3553(a) to the extent that they are applicable, if it finds that—

> (i)    extraordinary and compelling reasons warrant such a
>        reduction;
> . . .

and that such a reduction is consistent with applicable policy
statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

A prisoner seeking a sentence reduction under this statute must make three

showings.  See United States v. Patten, Crim. No. 18-cr-073-LM-1, 2021 WL

275444, at *1 (D.N.H. Jan. 27, 2021); United States v. Fields, ___ F. Supp. 3d ___,

2021 WL 3518832, at *2 (D.N.H. Aug. 9, 2021).  First, the prisoner must show that

he either fully exhausted his administrative remedies within the Bureau of Prisons

("BOP") or that he waited thirty days after BOP received his request to seek a

sentence reduction on his behalf.  See 18 U.S.C. § 3582(c)(1)(A); Patten, 2021 WL

275444, at *1.  Second, he must show that there are "extraordinary and compelling

reasons" for a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  "[T]he court has

'broad discretion to determine what constitutes an extraordinary and compelling

reason under § 3582(c)(1)A)' and may consider 'any' of the defendant's reasons for

release," regardless of whether those reasons are consistent with the Sentencing

Commission's policy statement on compassionate release.  Fields, 2021 WL

3518832, at *6 (quoting United States v. Trenkler, ___ F. Supp. 3d ___, 2021 WL

1811652, at *7 (D. Mass. May 6, 2021)); see id. at *2-6 (explaining why the

2

Sentencing Commission's policy statement on compassionate release, U.S.S.G. § 1B1.13, is not applicable to motions for compassionate release filed by prisoners). Finally, the court must "consider[ ] the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

## BACKGROUND

On December 13, 2017, a grand jury returned a two-count indictment against Feliz.  In Count I, the grand jury charged Feliz with conspiracy to make a false statement during the acquisition of a firearm.  See 18 U.S.C. §§ 371, 922(a)(6).  In Count II, the grand jury charged him with possession of a firearm in furtherance of a drug trafficking crime.  See 18 U.S.C. § 924(c).  Feliz was arrested on December 18, 2017, and he has been in custody on these charges since that time.  On March 19, 2018, Feliz entered guilty pleas on both counts of the indictment without the benefit of a plea agreement.

Feliz was subject to a mandatory minimum sentence of 60 months' imprisonment on Count II, to run consecutively to any incarcerative sentence on the Count I.  See 18 U.S.C. § 924(c).  The advisory sentencing guidelines's recommendation for the conspiracy charge was 18-24 months; however, the court varied downward to 10 months.  The court's variance was based largely on the fact that Feliz, who was 20 years old at the time of sentencing, had not previously served an incarcerative sentence.  See doc. no. 22 at 23-25 (transcript of sentencing hearing).  The court also factored into its sentence the fact that Feliz had never

received treatment for his issues with drug addiction, mental health, and anger management, as well as his relative youth at the time of the instant offenses.  See id.  Given the 10-month sentence on Count I and the mandatory 60-month, consecutive sentence on Count II, the court ultimately sentenced Feliz to 70 months' imprisonment.  See id. at 27; see also doc. no. 18 at 2 (judgment).[1]

As of the date of Feliz's hearing on the instant motion he had served approximately 45.5 months, which is 75% of his 70-month sentence (counting anticipated good-time credits).  According to the government, Feliz's estimated release date is March 12, 2023—18 months from now.

## DISCUSSION

The government does not dispute that Feliz has exhausted his administrative remedies.  Thus, the court begins by assessing whether there are extraordinary and compelling reasons for a sentence reduction.

In the context of the COVID-19 pandemic, courts have held that a generalized risk of infection by the virus is not, by itself, sufficient to constitute an extraordinary and compelling reason for a sentence reduction.  See United States v. Ramirez, 459 F. Supp. 3d 333, 337-38 (D. Mass. 2020) (collecting cases).  "On the other hand, a combination of health and age factors that put a prisoner at a substantially higher risk due to COVID-19 along with a documented risk of the

---

[1] The court also recommended that Feliz participate in BOP's Residential Drug Treatment Program (RDAP).

disease in the facility where the defendant is incarcerated may demonstrate extraordinary and compelling reasons to reduce the prisoner's sentence." United States v. Bischoff, 460 F. Supp. 3d 122, 125 (D.N.H. 2020).

When determining whether a defendant is at a particularly high risk of experiencing a severe illness from COVID-19, courts have generally looked to the CDC guidelines. See, e.g., Patten, 2021 WL 275444, at *3. Based on information known at this time, the CDC has identified certain underlying medical conditions that increase or may increase the risk of suffering a severe case of COVID-19.[2] The CDC states that "[h]aving cancer can make you more likely to get severely ill from COVID-19."[3] In addition, "[t]reatments for many types of cancer can weaken [the] body's ability to fight off disease," and studies suggest that even "having a history of cancer may increase [the] risk" of suffering a severe case of COVID-19.[4]

Here, Feliz was diagnosed in May 2021 with a form of cancer known as "acute promyelocytic leukemia" ("APL") and is undergoing chemotherapy. Although APL is highly curable,[5] both the disease itself and available treatments reduce blood

---

[2] CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Sept. 27, 2021).

[3] Id.

[4] Id.

[5] Centers specializing in APL report cure rates as high as 90%. See Leukemia & Lymphoma Society, Acute Promyelocytic Leukemia Facts, https://www.lls.org/sites/default/files/National/USA/Pdf/Publications/APL_FactSheet_10_15FINAL.pdf (last visited Sept. 27, 2021).

platelet levels and inhibit blood clotting.[6]  This can lead to prolonged bleeding from minor cuts, marks and bruises occurring for no reason or because of only minor injuries, and even bleeding in the brain or lungs—which can be fatal.[7]  Due to these bleeding complications, APL is "still linked with a significant incidence of early death during the initial course of treatment."[8]

Given Feliz's diagnosis and attendant treatment, it cannot be disputed that he is at heightened risk of severe illness should he contract COVID-19.  Indeed, the government "agrees that [Feliz's] health conditions meet the threshold requirement of extraordinary and compelling reasons" for a sentence reduction.  Doc. no. 29 at 5 (quotation omitted).  The court agrees with the parties that Feliz has demonstrated an extraordinary and compelling reason for a sentence reduction.[9]  Therefore, the court proceeds to consider applicable sentencing factors under 18 U.S.C. § 3553(a).

 Applicable sentencing factors include the nature and circumstances of Feliz's offense, his personal history and characteristics, and considerations such as promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public from further crimes, and providing Feliz with

---

[6] See id.

[7] Id.

[8] Id. (parentheses omitted).

[9] Feliz notes in his supplement to his motion for compassionate release (doc. no. 28) that he received the first dose of the Moderna COVID-19 vaccine but did not receive a second dose.  Feliz's doctors determined that a second dose was unlikely to be effective in light of Feliz's cancer treatments.

needed care, training, and rehabilitation in the most effective way.  See 18 U.S.C. § 3553(a)(1)-(2).

The nature of Feliz's offense was serious.  He solicited his co-defendant, Justin Parker, to purchase firearms for Feliz in exchange for drugs.  One of those handguns ended up in the possession of a minor, who accidentally shot himself in the hand.  Although the minor suffered only ligament damage, the court noted at Feliz's sentencing hearing that Feliz would likely have faced even more serious charges had the minor died or suffered a more serious injury.  See doc. no. 22 at 24. As the court recognized at Feliz's sentencing hearing, "[i]llegal guns and drugs are as serious a combination of crimes as it gets."  Id.

However, a sentence reduction is not inconsistent with the serious nature of Feliz's offense.  The court sentenced Feliz to a 70-month sentence.  Importantly, Feliz has served 75% of that sentence, after accounting for good-time credits to which he appears to be entitled.  Feliz's projected release date is in March of 2023, only 18 months from now.  Because Feliz has served a majority of his sentence, the serious nature of his offense is accounted for even in granting his request for a sentence reduction.

Feliz's history and personal characteristics support a sentence reduction. This 70-month sentence is the first incarcerative sentence Feliz has served.  He was only 20 years' old at the time of the instant offense; thus, Feliz has spent nearly all his adult life incarcerated on the instant charges.  Moreover, while Feliz had previous convictions at the time of sentencing, all of them involved traffic offenses

or altercations between Feliz and his brother, and each conviction resulted in only a probationary or diversionary sentence.

Feliz's criminal history was driven in part by his untreated drug addiction. Feliz consumed alcohol to excess from age 14 until his arrest for the instant offense. He also began smoking marijuana at age 14 and smoked marijuana on average five times per day until his arrest.  He began using cocaine at age 17 and consumed between one and two grams per day.  He has also experimented with opiates.  Feliz needs drug treatment and has expressed a willingness to participate in treatment. The court included a recommendation in Feliz's sentence that he participate in BOP's Residential Drug Treatment Program ("RDAP).[10]  Additionally, Feliz recognized at sentencing that his convictions stemming from physical altercations with his brother were due in part to a lack of healthy anger management skills. Feliz has previously received treatment for anger management and would likely benefit from working with his probation officer to obtain further community-based treatment upon his release.

It was for all these reasons that the court varied downward from the applicable Sentencing Guidelines range when originally sentencing Feliz.  Feliz was subject to a mandatory minimum sentence of 60 months on Count II, to run consecutively to any sentence on Count I.  Feliz's guidelines sentence on Count I was 18-24 months, but the court sentenced him to just 10 months on that charge

---

[10] It is not clear whether Feliz has been able to engage in drug treatment while incarcerated due to his serious health issues.

given Feliz's lack of prior incarcerative sentences, his untreated drug and mental health issues, and his relative youth.  Reducing Feliz's sentence to time served adequately meets the goals of sentencing considering the proportion of his sentence he has already served as well as the serious and unexpected leukemia diagnosis that has developed since the time of sentencing.

## CONCLUSION

For the above reasons, the court grants Feliz's motion for compassionate release (doc. no. 23) as follows:

1. Feliz's sentence will be reduced to time served.

2. Feliz will be placed on supervised release for a term of three years.

3. During the term of supervised release, Feliz shall be subject to the Conditions of Release as set forth in Appendix A.

4. It is the court's expectation that probation shall oversee Feliz's compliance with the conditions of his supervision with sensitivity to his serious health needs.

5. The court will issue an amended criminal judgment.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

October 4, 2021

cc:  Counsel of Record

**APPENDIX A**

**Yoelfi Feliz**

**Dkt. No.: 17-CR-185-01-LM**

**Conditions of Release**

While under supervision, you must comply with the standard conditions that have been adopted by this Court, and the following mandatory:

> You must not commit another federal, state, or local crime.

> You must not unlawfully possess a controlled substance.

> The defendant must refrain from any unlawful use of a controlled substance. The defendant must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

> You must cooperate in the collection of DNA as directed by the probation officer.

In addition, you must comply with the following special conditions:

1. You must self-quarantine in an approved residence during the first 14 days of your supervised release.

2. The defendant must participate in a cognitive-behavioral treatment program, with a focus on anger management, and follow the rules and regulations of that program. The probation officer will supervise the defendant's treatment in the program (provider, location, modality, duration, intensity, etc.). Such programs may include group sessions led by a counselor or participation in a program administered by the probation officer. The defendant must pay the costs of the program.

3. The defendant must participate in a substance abuse treatment program and follow the rules and regulations of that program. The probation officer will supervise the defendant's treatment in the program (provider, location, modality, duration, intensity, etc.). The defendant must pay for the cost of treatment to the extent he is able, as determined by the probation officer.

4. The defendant must submit to substance abuse testing to determine if he has used a prohibited substance. The defendant must pay for the cost of treatment

1

to the extent he is able, as determined by the probation officer. The defendant must not attempt to obstruct or tamper with the testing methods.

5.  The defendant must not use or possess any controlled substances without a valid prescription. If the defendant has a valid prescription, he must disclose the prescription information to the probation officer and follow the instructions on the prescription.

6.  The defendant must not knowingly purchase, possess, distribute, administer, or otherwise use any psychoactive substances (e.g., synthetic marijuana, bath salts, etc.) that impair a person's physical or mental functioning, whether or not intended for human consumption, except with the prior approval of the probation officer.

7.  The defendant must not use or possess alcohol.

8.  The defendant must not go to, or remain at any place where he knows controlled substances are illegally sold, used, distributed, or administered without first obtaining the permission of the probation officer.